NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RACHAEL A., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, K.A., R.A., *Appellees*.

No. 1 CA-JV 19-0149
FILED 10-17-2019

Appeal from the Superior Court in Maricopa County
No. JD531300
The Honorable Jennifer E. Green, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Jennifer M. Perkins joined.

---

**M c M U R D I E**, Judge:

¶1        Rachael A. ("Mother") appeals the termination of her parental rights to her children, Korina, age 4, and Robert, age 2 (collectively, the "children"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        In 2017, Robert was born substance-exposed to marijuana. The Department of Child Safety ("DCS") did not initially file a dependency petition but instead offered Mother in-home services to address concerns regarding Mother's substance abuse. In October 2017, Mother completed a hair follicle and urinalysis test. The hair follicle test was positive for methamphetamine, but the urinalysis test was negative. DCS referred Mother for substance abuse treatment, but the referral was closed due to Mother's lack of contact. DCS also visited the home twice to conduct welfare checks but was not successful in contacting Mother.

¶3        The children were removed from Mother's care in November 2017, when DCS filed a dependency petition based on Mother's positive drug tests, lack of engagement with in-home services, and lack of cooperation with welfare checks. During the out-of-home placement, DCS offered Mother services to address concerns regarding the reasons for removal. The services included drug testing, substance abuse treatment, case-aide visitation, a psychological evaluation, domestic violence counseling, and transportation. Other than four positive drug tests and consistent participation in case-aide visitation, Mother did not substantially complete any services offered by DCS.

¶4        In August 2018, DCS moved to terminate Mother's parental rights to the children under the substance abuse ground, Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), to Robert under the six months' time-in-care ground, A.R.S. § 8-533(B)(8)(b), and to Korina under the nine months' time-in-care ground, A.R.S. § 8-533(B)(8)(a). The juvenile court held a termination adjudication in March 2019, during which the case manager

and Mother testified. Following the hearing, the juvenile court found that Mother had "a lengthy history of abusing illegal drugs" and is "unable to put the needs of her children above herself." Therefore, the court found DCS met its burden of proof regarding the substance abuse ground for termination. The court also found that DCS met its burden of proof for the time-in-care grounds for termination. The court found that DCS proved by a preponderance of the evidence that termination of Mother's parental rights would be in the children's best interests. Accordingly, the court issued an order granting DCS's termination motion regarding Mother. Mother timely appealed, and we have jurisdiction under A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶5        To support the termination of parental rights, DCS must prove at least one or more statutory ground for termination by clear and convincing evidence. A.R.S. § 8-537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *ADES v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). We review the court's termination decision for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. ADES*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## A.    The Juvenile Court Did Not Abuse Its Discretion by Terminating Mother's Parental Rights to the Children on the Time-in-Care Grounds.

¶6        Mother argues there is insufficient evidence to support the juvenile court's order terminating her parental rights to the children under the time-in-care grounds. To terminate Mother's rights under the nine months' time-in-care ground, DCS must establish by clear and convincing evidence that: (1) the child had been in court-ordered out-of-home placement for at least nine months; (2) DCS made a "diligent effort to provide appropriate reunification services"; and (3) despite these efforts, Mother has substantially neglected or willfully refused to remedy the circumstances causing the children to be in an out-of-home placement. A.R.S. § 8-533(B)(8)(a); *see also E.R. v. DCS*, 237 Ariz. 56, 59–60, ¶ 16 (App. 2015). To terminate Mother's rights under the six months' time-in-care ground, DCS must establish the same elements, with one exception; parental rights to a child under three years of age may be terminated after the child has been in court-ordered out-of-home placement for at least six months, rather than nine months. A.R.S. § 8-533(B)(8)(b).

¶7            Mother does not dispute the court's finding regarding the first requirement of A.R.S. §§ 8-533(B)(8)(a) or (b). Because the remaining provisions under the six or nine months' time-in-care grounds are the same, we examine each concerning both children in turn.

### 1.    DCS Made Diligent Efforts to Provide Appropriate Reunification Services to Mother.

¶8            Mother contends that DCS did not make diligent efforts to reunify the family. Specifically, Mother argues that DCS did not make diligent efforts by "failing to provide Mother sufficient time to reunify or by failing to consider a guardianship."

¶9            DCS has "statutory and constitutional obligations to make reasonable efforts to reunify" children with their families. *Jordan C. v. ADES*, 223 Ariz. 86, 96, ¶ 19 (App. 2009). When moving to terminate parental rights under one of the time-in-care grounds, DCS must also show that its efforts were diligent. A.R.S. § 8-533(B)(8); *see Mary Ellen C. v. ADES*, 193 Ariz. 185, 192, ¶ 30 (App. 1999) (discussing the difference between "reasonable efforts" and "diligent efforts"); *see also Donald W. v. DCS*, 247 Ariz. 9, ¶ 50 (App. 2019) (requiring DCS to "provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period"(emphasis omitted)). "The juvenile court is to consider the availability of reunification services to the parent and his or her participation in those services, and must find that [DCS] made a diligent effort to provide such services." *Christina G. v. ADES*, 227 Ariz. 231, 235, ¶ 14 (App. 2011). While the juvenile court must find that DCS made a diligent effort, DCS does not need to leave "the window of opportunity for remediation open indefinitely." *Maricopa County Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

¶10           The juvenile court correctly found that DCS made diligent efforts to provide Mother with appropriate reunification services. DCS offered Mother drug testing, substance abuse treatment, case-aide visitation, a psychological evaluation, recommendations for domestic violence counseling or classes, and transportation to the services. Although DCS scheduled drug testing throughout the proceedings, Mother only completed four additional tests after the initial October 2017 tests. DCS also had to refer Mother for substance abuse treatment three times due to her lack of participation. Although Mother completed an intake after the second referral, the case was closed due to lack of contact, and DCS submitted a third referral, which Mother also ignored. Additionally, DCS provided recommendations for free domestic counseling and classes and

scheduled a psychological evaluation. DCS offered to provide Mother with transportation to the domestic violence counseling and psychological assessment; however, Mother did not participate in these services. Throughout the dependency, DCS also offered case-aide visitations, which Mother did participate.

¶11        Mother contends that DCS did not provide enough time to reunify; however, DCS met the statutory requirements for diligent efforts to reunify. A.R.S. §§ 8-533(B)(8)(a), (b). DCS offered services to Mother before the children's removal; DCS continued to provide services to Mother after filing the dependency petition; and DCS continued to schedule drug tests after moving for termination. Although DCS must make reasonable efforts, DCS is not required to make futile efforts to provide services. *See Mary Ellen C.*, 193 Ariz. at 192, ¶ 34. The children, therefore, were in an out-of-home placement for more than nine months before DCS moved to terminate Mother's parental rights, during which she could have engaged in services to reunify with the children. Because this time frame meets the time requirement under either the six or nine months' time-in-care grounds, DCS provided Mother sufficient time to reunify. A.R.S. §§ 8-533(B)(8)(a), (b).

¶12        Mother contends that DCS did not make diligent efforts to reunify by "failing to consider a guardianship." DCS makes a diligent effort when it provides a parent "with the time and opportunity to participate in programs designed to help" that parent become an effective parent. *Christina G.*, 227 Ariz. at 235, ¶ 14 (quoting *Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994)). DCS based its concerns regarding Mother's ability to be an effective parent on her substance abuse. The possibility of a guardianship would not affect Mother's substance-abuse issues. Therefore, consideration of a guardianship does not qualify as a service to help Mother become an effective parent and does not affect the analysis of DCS's diligent efforts. Consideration of a guardianship relates to the children's placement rather than the services DCS provided for Mother. Failure to consider a guardianship, therefore, does not preclude a finding of diligent efforts.

¶13        Because reasonable evidence supports the juvenile court's diligent-efforts finding in this case, the juvenile court correctly found that DCS made diligent efforts to provide Mother with appropriate reunification services.

### 2. Reasonable Evidence Supports the Juvenile Court's Finding that Mother has Substantially Neglected or Willfully Refused to Remedy the Circumstances Causing the Children to be in an Out-of-Home Placement.

¶14 Mother contends that reasonable evidence does not demonstrate that she substantially neglected or willfully refused to remedy the circumstances causing the children to be in an out-of-home placement. The relevant circumstances are "'those circumstances existing at the time of the severance' that prevent a parent from being able to appropriately provide for his or her children." *Jordan C.*, 223 Ariz. at 96, ¶ 31, n.14 (quoting *Marina P. v. ADES*, 214 Ariz. 326, 330, ¶ 22 (App. 2007)). The court examines "the level of the parent's effort to cure the circumstances rather than the parent's success in actually doing so." *Marina P.*, 214 Ariz. at 329, ¶ 20. Although a parent may not need to remedy the circumstances fully, parents must make "appreciable, good faith efforts to comply with remedial programs outlined by [DCS]." *JS-501568*, 177 Ariz. at 576.

¶15 Here, the circumstance causing the children to remain in an out-of-home placement at the time of the termination hearing was primarily Mother's failure to address her substance abuse. At the termination hearing, the case manager testified that, to her knowledge, Mother had not completed any substance abuse treatment programs. Despite referring Mother for treatment three times, Mother did not complete more than an initial intake and was closed out each time due to lack of contact. Furthermore, she did not provide DCS with proof that she participated in another treatment program.

¶16 In its ruling, the juvenile court found that "Mother did not demonstrate that she meaningfully addressed her longtime substance abuse addiction." Mother does not explain her lack of participation in a substance abuse treatment program.

¶17 Throughout the case, DCS offered Mother drug testing services; however, Mother only completed four tests after the October 2017 tests. Mother completed an oral swab in January 2018, which was positive for methamphetamine, and a urinalysis in March 2018, which was positive for methamphetamines and marijuana. During the proceedings, Mother also tested positive for methamphetamines, morphine, and opiates during a prenatal appointment for a child not subject to this appeal. When Mother subsequently gave birth to the child not subject to this appeal, Mother tested positive for amphetamines and opiates at the hospital.

¶18 Mother testified that she decided to stop drug testing because she believed her prescription medications were causing positive drug results. When asked whether she recognized that failing to participate in testing "might interfere with [her] ability to get [her] children back," Mother indicated she understood the risk. Mother's position for why she should not have been required to participate in services such as drug testing demonstrates a willful refusal to remedy the circumstances surrounding her substance abuse. Additionally, Mother did not complete or explain her lack of participation in a substance abuse treatment program. Reasonable evidence supported the juvenile court's finding that "Mother substantially neglected to remedy her drug problem."

¶19 Additionally, regarding other services such as domestic violence counseling and a psychological evaluation, Mother does not dispute her level of participation but instead challenges whether she should have been required to participate in the services. When asked why she did not participate in a psychological evaluation, Mother testified that she did not see a reason for it. Because Mother failed to participate in all the above-listed services, there was reasonable evidence for the court to conclude that she substantially neglected to remedy the circumstances causing the children to remain in an out-of-home placement.

¶20 Mother contends that DSC failed to "prove by clear and convincing evidence an inability to parent but proved a 'gotcha' severance because [she] did not cooperate or participate in services." Mother argues that the time-in-care grounds "required a finding of parental unfitness to parent," but the failure of a parent to remedy the circumstances causing the children to be in an out-of-home placement is a proxy for parental unfitness. *Alma S. v. DCS*, 245 Ariz. 146, 150, ¶ 10 (2018). The time-in-care ground is "synonymous with unfitness," and additional evidence of parental unfitness is not required. *Alma S.*, 245 Ariz. at 150, ¶ 9.

¶21 Accordingly, the juvenile court did not err by finding the six and nine months' time-in-care grounds met here. Because we affirm the juvenile court's order granting termination on the six and nine months' time-in-care grounds, we need not address Mother's arguments concerning the substance-abuse grounds. *See Jesus M. v. ADES*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

**B.     The Juvenile Court Did Not Abuse Its Discretion by Concluding Termination of Mother's Parental Rights Was in the Children's Best Interests.**

**¶22**     Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa County Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S.*, 245 Ariz. at 148, ¶ 1. "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 12 (2016). Finally, "[t]he existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests." *Dominque M. v. DCS*, 240 Ariz. 96, 98, ¶ 12 (App. 2016).

**¶23**     Here, the juvenile court found that the children's needs were being met in their current placement and that adoption of the children by a single adoptive placement was likely and possible. The children are currently placed with their aunt and uncle, who are willing to adopt them and moved to a larger house to accommodate the children. The children refer to their aunt and uncle as "Mom" and "Dad" and treat their children like siblings.

**¶24**     Mother does not challenge the court's findings concerning the children's adoptability. Instead, she argues that the court erred by not considering the "totality of the circumstances" in its best-interests analysis. Mother contends that the review should have included Mother's parenting ability, the bond between Mother and the children, and Mother's rehabilitation efforts. While consideration of these factors is relevant, none are dispositive. *See Dominique M.*, 240 Ariz. at 98, ¶ 12. Reasonable evidence supports the court's finding that termination was in the best interests of the children because adoption was likely and possible. *Demetrius L.*, 239 Ariz. at 4, ¶ 16. ("It is well established in state-initiated cases that [a] child's prospective adoption is a benefit that can support a best-interests finding.")

Additionally, given the previous discussion, we reject the argument that Mother's efforts could support finding that the children would not benefit from termination or not be harmed by giving Mother more time to complete services. As the juvenile court noted, "Mother never demonstrated sobriety" and Mother's interests do "not outweigh the need for the children to live in a home free of substance abuse." The juvenile court did not err by finding the termination of Mother's parental rights was in the children's best interests.

**CONCLUSION**

¶25        For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to the children.



AMY M. WOOD • Clerk of the Court
FILED:  AA